# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 2:14-cv-01111 ) |
| v. | ) Judge Mark R. Hornak ) |
| R.T. PATTERSON COMPANY, INC., et al, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

This is an insurance coverage case. The Plaintiff brings an action for a declaratory judgment only, seeking to have this Court say that it owes no duty to defend or to indemnify the Defendant as to claims asserted against the Defendant in a federal civil action now pending in the Northern District of Ohio at Akron, at its docket number 13-cv-2071, captioned *Babcock & Wilcox Power Generation Group, Inc. v. R.T. Patterson Company, Inc., et al.* ECF Nos. 1, 1-1.

The Defendant here has moved to stay this case until that Ohio case is resolved. ECF No. 11. The Plaintiff opposes that stay request, pointing out, correctly, that staying this case until the Ohio case is over is really a "win" for the Defendant, as at that point, all of the defense costs will have been paid, and that according to both parties, Pennsylvania insurance law provides that a carrier that pays defense costs that it is ultimately determined they are not obligated to pay has no avenue to recoup them from its insured. ECF No. 17, at 14 (citing *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 546 (2010)).

The Court set this case for oral argument on the stay motion for December 16, 2014, and in the notice of that argument, advised all parties that it was considering transferring this case to

the Northern District of Ohio, and that the parties should be prepared to address that at argument. *See* Text Order dated 12/05/2014[1].

## I. ANALYSIS

### A. The Parties' Arguments

First, the Plaintiff in this case contends that among the reasons that it owes no defense or indemnity duty to the Defendant are that the claims in the underlying Ohio case must be analyzed and construed, and in doing so, the Court would conclude that no matter how labelled, as a substantive matter, they are really contractual and warranty claims excluded from coverage under the applicable policy. ECF No. 1, at ¶¶60–61. Second, the Plaintiff insurance carrier makes a big deal, perhaps with good reason, of what it claims was a failure by the Defendant to give it due and proper notice of the claims ultimately asserted against it in the Ohio case. *Id.* at ¶¶50–58. Third, the Plaintiff in opposing the stay notes that in the Ohio case, the Defendant here has been pushing back on mediation of the Ohio case on the basis that this coverage issue must be resolved by this Court first. ECF No. 17, at 14–15.[2]

As can be seen, each and all of these matters substantially implicate the resolution of the matters before the Court in the Ohio case, namely, applying the applicable substantive law, what is the nature of the claims in the underlying action? Factually, what did the Defendant know about the claims that now make up that Ohio case and when did it know it? *See* ECF No. 1, at

---

[1] *See Meyers v. Heffernan*, No. 10-212, 2012 WL 1133732, at *5 (D. Del. March 29, 2012).

[2] Our Court of Appeals recently examined the scope and nature of how a District Court is to exercise what is a concededly discretionary function, that is the consideration and granting of the request for a declaratory judgment *vel non*. *See Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 145 (3d Cir. 2014). That case explored in detail the factors to be considered in determining whether to exercise discretion in proceeding with the declaratory judgment action, or whether a federal court should defer to a state court where the underlying case is then pending. Among the non-exclusive factors to be considered are the avoidance of duplicative litigation, the convenience of the parties, and the availability and relative convenience of other remedies. While the principles considered in *Reifer* related directly to the relationship between federal and state courts, the Court believes that they also carry weight in considering the relationship between coordinate federal trial courts, and the notion of respect for the proceedings in each.

¶¶52, 56. Then, if the resolution of the coverage issue is in actuality or reasonable perception an impediment to getting the Ohio case into mediation or having that process have value, then the resolution of these issues is directly tied to the disposition of both the substantive and procedural issues in the Ohio case. From this Court's perspective, these are all reasons for the transfer of this case to the same Court in which the underlying case is pending, since doing so would by any measure further the "interests of justice" pursuant to 28 U.S.C. § 1404(a).

At oral argument, counsel for both parties extensively addressed these matters. Counsel for the Defendant conceded that this action could have been brought against it in the Northern District of Ohio, since the Defendant would be subject to the exercise of personal jurisdiction in that District, thus making venue over this action permissible under 28 U.S.C. §§ 1391(b)(1), (c)(2). But, it says, sending this case to that District would not be a good idea, mainly because it would put the coverage issue, and the disposition of the underlying liability issues, in the same forum, which it says would be an unjust and impermissible decisional conflict. The Court cannot agree.

First, and importantly, the coverage issue in a declaratory judgment action would be decided by the Court in Ohio just as it would be here, not the fact finder in the underlying civil suit.[3] Second, our Circuit law, applying both federal declaratory judgment law and substantive Pennsylvania law, easily recognizes that both a coverage declaratory judgment action and an underlying liability case can be going on at exactly the same time, and in the same court. *See Reifer v. Westport Ins. Corp.*, 751 F.3d 129 (3d Cir. 2014); *State Auto Ins. Companies v. Summy*, 234 F.3d 131 (3d Cir. 2000). Thus, no party has pointed to any substantive rule of law that

---

[3] According to the docket in the underlying case, the defendant in the underlying case, the Defendant here, requested a jury trial in that proceeding. *Babcock & Wilcox Power Generation Group, Inc. v. R. T. Patterson Company, Inc. et al.*, No. 13-2071, ECF No. 10 (N.D. Ohio Nov. 26, 2013).

3

would get in the way of the declaratory judgment action and the underlying case being in the same court, before the same judge.[4]

B. **Tranfer of Venue**

This Court must consider the factors set out by our Court of Appeals in *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995). Because venue is proper in both this District and in the Northern District of Ohio, *see Ziemkiewicz v. R+L Carriers, Inc.*, No. 12-1923, 2013 WL 505798, at *2 (D.N.J. Feb. 8, 2013) (explaining that pursuant to 28 U.S.C. § 1404(a) "the Court must first determine whether the alternate venue is one in which the case 'might have been brought'"), and because this Court gave fair notice to the parties prior to the oral argument, and they argued these issues to the Court at that time, *see, e.g., Nalls v. Coleman Low Federal Institution*, 440 F. App'x 704, 706 (11th Cir. 2011), the Court may consider whether to transfer the action under the *Jumara* test. The *Jumara* "test" consists of a number of private and public factors that the transferor court is to consider:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest

---

[4] The Court further notes that it is entirely permissible for a district court to transfer an action *sua sponte* to another federal district court pursuant to § 1404(a). *See Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011); *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 972 (8th Cir. 2012) ("There is authority supporting the district court's ability to sua sponte transfer a case under § 1404(a)."); *Shisinday v. Texas Dep't of Criminal Justice-Agency*, 124 F. App'x 898, 899 (5th Cir. 2005); *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) ("The broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer sua sponte."). Such transfers are permitted, even over the objection of the parties. *Meyers v. Heffernan*, No. 10-212, 2012 WL 1133732, at *5 (D. Del. Mar. 29, 2012) (explaining that, as long as the parties have adequate notice and opportunity to be heard on a district judge's contemplated *sua sponte* transfer, "[a] court's authority to transfer cases pursuant to 28 U.S.C. § 1404(a) does not depend upon a motion, stipulation, *or consent* of parties to the litigation") (emphasis added).

4

in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879–80 (citations omitted).

As to the private interests, there is no question that the Plaintiff wants this case to remain here, so that factor facially cuts against transfer. That said, the only reason vigorously advanced at oral argument for that preference was to maintain counsel now in the case, on the case. That appears to the Court to not carry much weight, since Plaintiff's lead counsel at the oral argument is resident in New York City. Thus, the only issue is whether he will travel to Pittsburgh or Akron. Further, as noted below, even for Pittsburgh counsel, the distance between the two involved federal courthouses is not great.

The Defendant also prefers to be here, but the reasons advanced for that appear to the Court to be equally weak. After all, it wants this Court to stay the case, so perhaps its preference is driven by a desire to have not much happen in this case, at least for quite some time. On top of that is the reality that the two involved Districts border one another. The underlying case is already pending in the Akron Division of the Northern District of Ohio, and according to Google Maps, the two involved courthouses are 110 miles apart, pretty much completely on Interstate highway. Given that the Defendant concedes that it has an office in that District[5], and routinely does business there, and is already litigating the underlying case in that District, this factor, while facially cutting against transfer, does not do so with much strength, if at all.

These considerations also apply to the "convenience of the parties" factor, but the Court would note that the Defendant here is also the lead defendant in the underlying case, so it is

---

[5] The complaint in the underlying case alleges that a substantial portion of the events or omissions giving rise to the claims asserted in that case arose in the Northern District of Ohio. ECF No. 1-1 at ¶ 5. The construction project involved in that case was in Kansas, and the litigation related to its design, the underlying case, is pending in Ohio, where the Defendant has what is an apparently meaningful presence. The Plaintiff here is an Oklahoma corporation with its principal office in Georgia. ECF No. 1 at ¶3. For the reasons set forth at length in this Opinion, the Court concludes that there is no special purpose to be advanced by adding Pennsylvania to the list of locales materially involved in the disposition of this case. *See Kelly v. Kelly*, 911 F. Supp. 70, 72 (N.D.N.Y. 1996).

5

already deeply involved in litigation matters in that District, and its witnesses and "books and records", if even in the mix at all in a declaratory judgment action arguably based solely on the wording of an insurance contract, are already extensively involved in that judicial District. Certainly given the world in which we live of virtually instantaneous electronic transmittal of data and documents, by any measure any necessary papers can be produced with comparable ease in both this and that District.[6]

As to the *Jumara* public factors, it would appear that given the presence of the Defendant in both Districts, any judgment can be readily enforced in either District. As to ease of the trial or hearings on the declaratory judgment action in this case, that would appear to go just as smoothly in either District, and probably a lot more expeditiously in the Northern District of Ohio, given that the parties have explained, as noted above, how issues endemic to the underlying case significantly bleed over to this one. While this Court notes that the federal court in the Northern District of Ohio is as a whole and by any measure a very, very busy one[7], the Court concludes that that consideration is strongly counterbalanced by the inter-relationship of the key issues in the underlying case and what the parties say are the really important issues in this case. Further, the advantages to any federal trial court of having all of the potential issues and "players" in one spot, rather than two, are both strong and self-evident.

As to any local interests, the Court concludes that they are in equipoise. On the one hand, perhaps the application of Pennsylvania insurance law would tilt the table toward the case

---

[6] It would appear to the Court from its examination of the Complaint in this case that the coverage issue will be decided principally, if not exclusively, based on a consideration of the language of the involved insurance policy and an examination of the stated nature of the claims in the underlying action, at least as to the "duty to defend" issue. *See Peerless Ins. Co. v. Pennsylvania Cyber Charter School*, 19 F. Supp. 3d 635, 643–44 (W.D. Pa. 2014). Thus, at least as to that part of the case, the location of witnesses and records would not seem to be relevant.

[7] This Court would note that it also requested that our Circuit Librarian obtain the specific current case assignment statistics for the judicial officer presiding over the underlying case in Akron, the Honorable Sara Lioi. Our Librarian reported that such data was not available to her from the Clerk of Court for the Northern District of Ohio.

remaining in this District, but by the same token, it then gets tipped the other way in terms of having important decisions on the definition of the claims under the prevailing law applicable to the underlying case pending in Ohio decided in Ohio by an Ohio judge. Finally, the parties pretty much conceded at oral argument on the stay motion that the insurance law issues involved here are not nuanced, and that their resolution will necessarily be driven by the interpretation of the claims pending in the underlying case, and as to the "notice" issue upon facts to be developed in that litigation as to how and when those claims arose. Such matters are necessarily at the center of the case in Ohio. By any measure, these two cases are closely related in any "realistic" sense. *See Evangelical Lutheran Church In Am. v. Atl. Mut. Ins. Co.*, 973 F. Supp. 820, 824 (N.D. Ill. 1997).

The Defendant is concerned that the federal court in Akron might confuse or muddle the issues in the two cases. That is, it would be burdened by having to simultaneously be aware of and consider the arguments of the parties as to both liability and coverage. As to that, this Court has no concerns, nor should the parties. It can be easily presumed that any judge to whom this matter is assigned will appropriately consider and address such matters in the appropriate manner. Further, as noted above, the *Summy/Reifer* decisional law in our Circuit provides that in circumstances in which the district courts should decline to exercise their discretion to entertain a coverage declaratory judgment action and defer to a pending state court case, the same judge will have the liability case and the coverage case in their court at the same time.

The Plaintiff's concerns along these lines seem to be two-fold. First, it wants to keep its lawyers on the case. This Court has no legal or factual basis to conclude that it cannot do just that in federal court in Akron. Second, the Plaintiff appeared to be concerned that, as the insurance carrier, it might end up being "dragged into" matters involved in the underlying action,

including any mediation. From this Court's perspective, that argument really does not hold water. First, it is hard to believe that all participants in the Ohio case do not know that there is the possibility of coverage, who the carrier is, and that it would seek to limit its obligations under the insurance policy. Second, the Plaintiff can easily make whatever arguments they have as to how, when, or whether they should (or should not) be involved in any proceedings in the underlying Ohio case to the Ohio federal judge. Finally, to protect its own interests, it is certainly more than likely that the carrier would want to be well aware of, and likely involved in, any mediation proceeding.[8]

In the end, as the parties in briefing and arguing the stay motion demonstrate, and as is evident from this Court's considering the claims in the declaratory judgment Complaint in the context of those in the underlying action, there is a very high level of interrelationship between the central issues in this case and those in the underlying action in Ohio. Sound principles of judicial administration and the "interests of justice" strongly support the two cases being in the same Court, and the interests advanced by the parties for not doing that, considered as a whole, are at best a neutral in making the transfer decision.

---

[8] The parties advised this Court that the underlying action appears to be headed to trial in Ohio in April, 2015. They all agreed that if this Court did not stay this case, they wanted to have about ninety (90) days for discovery, followed by a summary judgment briefing period that would total in excess of seventy (70) days. That would take this case to at least mid-May, 2015. Thus, if the parties stuck to that schedule, any mediation in the Ohio case would almost certainly occur before the coverage issue was decided by any District Court.

## II. CONCLUSION

The Court concludes that pursuant to 28 U.S.C. §1404(a), the proper course it to transfer this action forthwith to the United States District Court for the Northern District of Ohio at Akron.[9]

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: December 23, 2014

cc: All counsel of record

---

[9] Of course, the assignment of such case on that docket is a matter for that court. N.D. OH. Local Rule 3.1.